UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE BOOTH, et al.,

      Plaintiffs,                                   Civil Action No. 20-CV-10730

vs.                                           HON. BERNARD A. FRIEDMAN

FLINT POLICE OFFICERS
ASSOCIATION, et al.,

      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

        This matter is presently before the Court on (1) the motion for summary judgment filed by defendants City of Flint, Makini Jackson, and Terence Green (collectively, "the Flint defendants") (ECF No. 57); (2) the motion for summary judgment filed by defendant Police Officers Labor Council ("POLC") (ECF No. 58); and (3) plaintiffs' motion for summary judgment (ECF No. 59). These motions are fully briefed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide them without a hearing. For the reasons stated below, the Court shall grant defendants' motions and deny plaintiffs' motion.

        This case concerns an employment and labor dispute. Plaintiffs are six police officers employed by the City of Flint who allege that they were improperly demoted. In their first amended complaint ("FAC"), plaintiffs allege that in 2019 they held the position of provisional sergeant. *See* FAC ¶ 19. In August 2019 plaintiffs' union, the Flint Police Officers Association ("FPOA"), filed a grievance on their behalf, demanding that they all be promoted to the position of permanent sergeant. *See id.* ¶¶ 24-25. The police chief, Timothy Johnson, granted this grievance and directed that plaintiffs be promoted from provisional to permanent sergeant. *See id.* ¶¶ 26-27. "Upon

promotion to permanent Sergeant from provisional Sergeant, Plaintiffs became part of the bargaining

unit for the  Flint Police Department Sergeants ('FPSA') and represented by POLC." *Id.* ¶ 28.  On

October 15, 2019, "FPSA, filed a grievance . . . [alleging that] the appointments were based on

favoritism." *Id.* ¶ 29.

        Later in October 2019, plaintiffs were returned to the position of provisional sergeant

under the following circumstances:

> 35. In order to gain political favor with FPSA, and in an attempt to
> try to appease members of FPOA, . . . , Mayor Weaver directed her
> staff and/or attorneys, including Defendant Jackson, [Flint's director
> of human resources and labor relations], to reverse the  decision of
> the then-Chief of Police to promote Plaintiffs to the positions of
> permanent Sergeant.
>
> 36. On or about October 29, 2019, without providing any notice to
> Plaintiffs or Plaintiffs' bargaining unit – POLC – Defendant Jackson
> entered into a Memorandum of Understanding ("MOU") with the
> executive board of the FPOA . . . , which demoted Plaintiffs from
> permanent Sergeant to provisional Sergeant.

FAC ¶¶ 34-35.[1]

_____

    [1] A copy of this MOU, which was signed by representatives of the city and the FPOA, is
attached to the Flint defendants' motion for summary judgment as Ex. 10.  It states in relevant
part:

RECITALS

> The City and FPOA are parties to an expired
> collective bargaining agreement ("CBA"), and are
> currently in negotiations for a successor CBA; and
>
> The City previously appointed six (6) members of the
> FPOA bargaining unit ("the Provisional Appointees"),
> to the position of Provisional Police Sergeant ("the
> Provisional Appointments"); and
>
> The FPOA filed a grievance regarding the Provisional

2

Appointments ("the Appointments Grievance"), which the FPOA maintains the parties had agreed to hold in abeyance until the completion of the negotiations between the parties regarding Provisional Appointments, including specific language in the CBA which addresses such appointments; and

As a result of a misunderstanding between the parties, the City recently granted the Appointments Grievance, and changed the status of the Provisional Appointees from provisional to permanent; and

Issues have arisen regarding the promotion of members of FPOA outside the promotional examination requirements and procedures contained in Article 35 (Promotions) of the CBA; and

The parties desire to amicably resolve those issues related to the Provisional Appointments, and desire to hold a promotional examination for the permanent placement of members of FPOA into the position of Police Sergeant; and

The parties commit their understanding in writing in this MOU;

NOW, THEREFORE, the parties agree as follows:

1. The City shall return the Provisional Appointees (listed below) to their *status quo ante*. The status of the Provisional Appointees will remain unchanged pending the completion of a promotional examination for the permanent placement of FPOA members into the position of Police Sergeant.

[Plaintiffs' names listed.]

The City will hold a written promotional examination to establish an Eligible List on or before October 31, 2020. All otherwise eligible members of the FPOA bargaining unit may sit for the written promotional examination. The Provisional Appointees shall sit for this promotional examination.

Plaintiffs allege that they first learned of their demotion to the position of provisional sergeant when they received their November 7, 2019, paychecks so indicating.  *See id.* ¶ 38. Plaintiffs filed a grievance regarding this demotion with the POLC, which in March 2020 denied plaintiffs' request to take the grievance to arbitration.  *See id.* ¶¶ 42-43.  In December 2020, plaintiffs were notified by the police chief who succeeded Johnson, Terence Green, that they were being further demoted to the position of police officer.  *See id.* ¶ 45.  A sergeant's examination was administered the previous month, but plaintiffs declined to sit for it "because of the discriminatory fashion in which the exam was given."  *Id.* ¶ 46.

Plaintiffs assert five claims.  In Count I, plaintiffs claim that the city and Jackson violated their due process rights by depriving them of their permanent sergeant positions without

---

2. The City shall establish an Eligible List, hold oral promotional examinations, and establish a list of candidates for promotion to Police Sergeant as provided by the City's personnel rules and the CBA; provided, however, that any Provisional Appointee listed in Section 1 above, who receives a passing score on the written promotional examination shall be permanently placed into the position of Police Sergeant.

3. The list of candidates for promotion to Police Sergeant established pursuant to paragraph 2 shall expire no earlier than three years from the date it is established.

4. All pending grievances related to the Provisional Appointments filed prior to the date of this MOU will be withdrawn and dismissed by the FPOA with prejudice.  The Appointments Grievance is hereby dismissed, with prejudice.

5. The parties make this MOU in a good-faith effort to resolve all pending and potential disputes regarding its subject matter.  This MOU establishes no precedent or past practice regarding any part of the provisional or permanent appointment process for members of the FPOA bargaining unit.

notice or an opportunity to be heard.  In Count II, which the Court has dismissed, plaintiffs assert a tortious interference claim against the FPOA and its president, Kevin Smith.  In Count III, plaintiffs claim that the city violated their rights under the POLC CBA by demoting them from permanent to provisional sergeant without cause.  In Count IV, plaintiffs claim that the POLC violated its duty of fair representation ("DFR") by filing a grievance opposing plaintiffs' promotion to the position of permanent sergeant and failing to take to arbitration their grievance regarding their demotion to provisional sergeant.  And in Count V, plaintiffs claim that the Flint defendants violated their First Amendment rights by demoting them from the position of provisional sergeant to police officer in retaliation for filing the instant lawsuit.  For relief, plaintiffs seek damages, reinstatement to the position of permanent sergeant, and costs and attorney fees.

All parties seek summary judgment on all of plaintiffs' claims.  In deciding these motions, the Court

> must view the evidence in the light most favorable to the party opposing the motion for summary judgment.  *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020).  "This includes drawing 'all justifiable inferences' in the nonmoving party's favor."  *George*, 966 F.3d at 458 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Jackson-VHS*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

### Counts I and III:  Deprivation of Property Without Due Process, and Breach of Contract

Plaintiffs' first claim is that the city and its human resources director, Jackson, violated their Fourteenth Amendment rights by depriving them of property without due process when they demoted them from the position of permanent to provisional sergeant pursuant to the

MOU.  Plaintiffs' third claim is that the city violated their rights under the POLC (sergeants' union) CBA by demoting them without cause.  Having reviewed the parties' arguments, as well as all of the documents and deposition testimony, the Court concludes that these claims lack merit because plaintiffs' promotion to the position of permanent sergeant was improper, as it bypassed the longstanding, competitive procedure that was required by the city's personnel regulations and by the CBA between the city and the FPOA, and plaintiffs therefore were not entitled to be placed in that position or to remain there.  Further, since plaintiffs' promotion to the position of permanent sergeant was improper, plaintiffs never became bona fide members of the POLC and they were not protected by that union's CBA.  Therefore, plaintiffs have no claim that the city breached the POLC's CBA by demoting them.

Plaintiffs cannot claim that they were deprived of property without due process unless they had a property interest in their position as permanent sergeant.  Whether they had such an interest depends on whether they were entitled be placed in, and remain in, that position.  As the Sixth Circuit recently explained,

> [t]he Constitution does not create or define property interests, though. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972). Rather, courts identify property interests by reference to independent sources of entitlement such as state law or a contract between the parties. *See id.* at 577-78, 92 S. Ct. 2701; *Crosby*, 863 F.3d at 552. For instance, a job or government benefit is a property interest if there are "rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to" it. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972). But neither a "unilateral expectation" to enjoy the alleged property interest nor an "abstract need or desire for it" is enough. *Roth*, 408 U.S. at 577, 92 S. Ct. 2701. "The hallmark of property is an individual entitlement grounded in state law, which cannot be removed except for cause." *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L.Ed.2d 265 (1982)) (cleaned up).

6

> "Although the underlying substantive interest is created by an
> independent source such as state law, federal constitutional law
> determines whether that interest rises to the level of a legitimate
> claim of entitlement protected by the Due Process Clause." *Town of
> Castle Rock v. Gonzales*, 545 U.S. 748, 757, 125 S. Ct. 2796, 162
> L.Ed.2d 658 (2005) (internal quotation marks and emphasis omitted)
> (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9,
> 98 S. Ct. 1554, 56 L.Ed.2d 30 (1978)).

*Kaplan v. Univ. of Louisville*, No. 20-5965, 2021 WL 3642121, at *5 (6th Cir. Aug. 18, 2021).

> In the present case, plaintiffs argue that they
>
> had a property interest in their position as permanent Sergeant.  They
> were members of the sergeants' union.  There is a collective
> bargaining agreement between the sergeants' union (POLC) and
> Defendant City of Flint.  Under that agreement, Plaintiffs cannot be
> discharged without good cause and their seniority cannot [be] taken
> away with regard to their position.   PageID.250, 259-261.
> Accordingly, Plaintiffs had a protected property interest in their
> position as permanent Sergeants.
>
> *          *          *
>
> Plaintiffs held the position of permanent sergeant.  The City of Flint
> completed personnel forms indicating they held the position and
> Plaintiffs began paying dues to the sergeants' union.

Pls.' Summ. J. Br. at 15-16.[2]

Plaintiffs correctly note that they were promoted from the position of provisional to

permanent sergeant, but the process by which this occurred was unlawful.  Chief Johnson promoted

plaintiffs from their position as police officers to that of provisional sergeant because "[w]e needed

---

[2] A copy of the POLC CBA is attached as Ex. 10 to plaintiffs' motion for a preliminary
injunction.  *See* ECF 20-11 (PageID.246-305).  Article 4 thereof recognizes the city's exclusive
right "to discipline, suspend, discharge for cause, transfer or lay off Employees, [and] . . . to
decide . . . the type and location of work assignments . . ." PageID.250.  Article 10 deals with
seniority issues.  *See* PageID.259-61.

sergeants," Johnson Dep. at 8 (PageID.1162), and this appointment was permitted by the city's personnel rules (quoted below).  By August 2019, plaintiffs had been in this position for over a year, and two of them had been in this position for two years or longer.  *Id.*  According to Johnson, a city policy required that plaintiffs be promoted to the position of permanent sergeant after they had been in the provisional position for more than ninety days.  *Id.* at 12 (PageID.1163).  Johnson also believed that "in all fairness . . . it was the right thing to do" to promote plaintiffs to the permanent position because they had been provisional appointments for over a year and they "definitely deserved it."  *Id.* at 22, 31-32 (PageID.1165, 1168).  Therefore, when the FPOA presented him with the grievance, Johnson concurred in the demand that plaintiffs be promoted.  He signed the grievance the same day it was presented to him, *see id.* at 50 (PageID.1172), and the following month he signed the personnel requisition forms prepared by the human resources department reflecting the change in plaintiffs' position from provisional to permanent sergeant.  *See id.* at 17-19 (PageID.1164-65); Jackson Dep. at 27-33 (PageID.1112-13).  *See also* Pls.' Mot. for Prelim. Inj., Ex. 9 (PageID.240-44).  Apparently once the requisition forms were signed, the city's finance department began to deduct dues for the POLC, which represents sergeants, from plaintiffs' paychecks.  *See* Jackson Dep. at 105-06 (PageID.1131).

However, Johnson was mistaken about the city's policy concerning employees who have been in a provisional status for more than ninety days.  The applicable policy, which is set forth in the city's Personnel Rules and Regulations, states:

Rule VII - CERTIFICATION & APPOINTMENT

Section 3.  PROVISIONAL APPOINTMENT
When a vacancy develops in a classified position which cannot be filled as provided under these rules due to absence of an appropriate eligible list, the position may be filled by provisional appointment

pending the establishment of an appropriate eligible list. A provisional appointment may be continued in employment only until examinations can be held, an eligible list established, certifications made, and arrangements completed with the person whose name is certified to begin work, at which time the provisional appointee shall be terminated. Such appointment shall, insofar as practicable, be limited to a maximum of ninety (90) days. Upon termination of a provisional appointment, the employee shall be entitled to return to his prior employment status.

Section 4. TERMINATION OF PROVISIONAL APPOINTMENT
If an appointing authority does not select from a certified list, the vacancy will remain unfilled until the eligibles on the list are appointed to other vacancies and a new list prepared or until the list is abolished following expiration of the life of such eligible list. If the vacancy has been filled by a provisional appointment, the provisional appointment will be terminated within thirty (30) days from the date the list is certified to the appointing authority.

Flint Defs.' Mot. for Summ. J., Ex. 1 (PageID.889). Johnson was clearly mistaken in believing that

a city personnel policy required that plaintiffs be promoted merely because they had been in a

provisional status for more than ninety days. In fact, the applicable personnel rules say nothing

about promotions, but only that a provisional appointment "shall, insofar as practicable, be limited

to a maximum of ninety (90) days" and that in any event the appointment "shall be terminated" once

examinations are held, eligible lists are established, and certified persons can begin work.

Therefore, contrary to what Johnson believed, he was not acting in accordance with city policy when

he promoted plaintiffs to the position of permanent sergeant merely because they had been in the

provisional sergeant position for more than ninety days and, in his view, "deserved" to be promoted

to the permanent position.

Additionally, Johnson's promotion of plaintiffs directly conflicted with the CBA

between the city and the FPOA, which contained the following provision governing the procedure

by which police officers were to be promoted to the position of sergeant:

ARTICLE 35
PROMOTIONS

1. In the event the City, during the term of this Agreement, shall establish a new or different testing procedure or eligibility requirements for promotion to Sergeant, other than those hereinafter set forth, the City will negotiate with the Union relative thereto. In the event the parties are unable to agree, the matter shall be subject to the grievance procedure.

2. The city shall have the right to select among the top three (3) rank eligibles or from among all eligibles falling within three percentage (3%) points of the highest score certified, whichever produces the greatest of eligibles, plus all ties with the lowest score certified.

3. Additionally, the officer must have either a minimum of three (3) years of seniority and fifteen (15) college credit hours, or a minimum of five (5) years of seniority.

4. An Employee shall be allowed, upon his request, time off without loss of pay for the purpose of taking any written or oral examination concerned with promotion when such examination is administered by the City of Flint Human Resources Department and where the Employee is eligible to take such examination.

Flint Defs.' Mot. for Summ. J., Ex. 2 (PageID.892). Although this CBA expired on June 30, 2019, the provision concerning promotions is a "mandatory subject of bargaining" under Michigan labor law and therefore survived the expiration date and remained in effect until the parties agreed on a new CBA or negotiated over the term and reached an impasse.[3] *See Loc. 1467, Int'l Ass'n of Firefighters, AFL-CIO v. City of Portage*, 352 N.W.2d 284, 287-88 (Mich. Ct. App. 1984). In fact, Article 35 itself states that any change in the "testing procedure or eligibility requirements for promotion to Sergeant" would be negotiated. Plaintiffs do not appear to argue that Article 35 was

---

[3] The parties had begun negotiations over a successor CBA on June 19, 2019. *See* Williams Aff. ¶ 3 (PageID.902). The negotiations over the issue of promotions to sergeant continued through September and October 2019, *see* Flint Defs.' Mot. for Summ. J., Exs. 5-8 (PageID.907-20), and culminated in the MOU dated October 29, 2019.

not in effect in August 2019 when Johnson concurred in plaintiffs' grievance or in September 2019 when the city's personnel requisition forms indicated that plaintiffs had been promoted to the position of permanent sergeant.  *See* Pls.' Resp. to Flint Defs.' Mot. for Summ J. at 4 (discussing the CBA "between the FPOA and the City, which was in place in August of 2019").

Article 35 plainly required that promotions to sergeant be made only through the process described:  the city would select for promotion only those candidates who received the highest scores on an examination.  Witnesses in this case testified that for decades the city has always followed this procedure and that no one except plaintiffs has ever been put into the position of permanent sergeant by any other procedure.[4]  Devon Bernritter, the deputy police chief, testified that he has been employed by the Flint Police Department since 1995, and that there has never been a case of a provisional sergeant being promoted to permanent sergeant without testing.  Bernritter Dep. at 5, 17 (PageID.1064, 1067).  He indicated that a promotion "outside the competitive process" had never occurred except in plaintiffs' case.  *Id.* at 57-58 (PageID.1077).  Douglas Santiago, who started working for the Flint Police Department in 2005 and was president of the FPSA from 2019 to 2021, testified that the promotion to permanent sergeant has "always been [done via] a competitive exam which included a written test and an eligibility list."  Santiago Dep. at 5, 7, 48, 73 (PageID.1138-39, 1149, 1155).  Promotion to permanent sergeant the way plaintiffs achieved it,

---

[4] At his deposition, Johnson was asked whether he was aware of any other instances of employees being promoted to the position of sergeant outside of the competitive examination process.  In response, Johnson testified that sometime before he joined the Flint Department in 1985, perhaps around 1983, seven or eight police officers were "put in the detective bureau, and they held those positions for several years, and after that point in time I guess when they tried to send them back to patrol or something, they – they actually sued or went through the same type of grievance procedure, and they made every last one of them whole by promoting them to sergeant."  Johnson Dep. at 37-38 (PageID.1169).

whereby "the chief just signed off," previously "had never happened." *Id.* at 73-74 (PageID.1155).

The Court also notes the testimony indicating that plaintiffs were provided two opportunities recently to take the sergeants examination but elected not to participate. Terence Green, who succeeded Johnson as police chief in September 2020, testified that this examination was administered in October 2020 and again in April 2021. Green Dep. at 4, 16, 18 (PageID.1051, 1054). The four candidates who passed the October 2020 examination were placed on an eligibility list and promoted to sergeant, and the seven candidates who passed the April 2021 examination were likewise placed on an eligibility list and promoted to sergeant. *See id.* at 18-19 (PageID. 1054-55). Plaintiffs were eligible to take these examinations but, for reasons known only to them, they did not sit for either of them.[5] *See id.* at 32-33 (PageID.1058). As noted above, under the MOU all of the plaintiffs would have been promoted to the permanent sergeant position if they had simply taken the examination and obtained a passing score. Green testified that in order to make any additional promotions to sergeant, another examination would have to be administered and another eligibility list prepared, as required by the procedure negotiated with the FPOA. *See id.* at 34-36 (PageID.1058-59).

Under these circumstances, the Court concludes that plaintiffs had no "legitimate claim of entitlement" to be placed into the position of permanent sergeant by the police chief's granting their grievance. *Roth*, 408 U.S. at 577. Under Flint's personnel policies, under the city's

---

[5] In their response to the instant motion, plaintiffs indicate that they "chose not to take the [October 2020] exam because they believed it was illegal to force them to do so, and this action was pending." Pls.' Resp. to Flint Defs.' Mot. for Summ. J. at 13. They also indicate, in response to the POLC's motion for summary judgment, that "[s]ome of the Plaintiffs have taken the written exam for promotion to sergeant in the past but their eligibility for purposes of the eligibility list under the CBA was expired (see e.g., Nelson Hadley, PageID.409 and Candace Burton, PageID.351)." Pls.' Resp. to the POLC's Mot. for Summ. J. at 2 n.2.

CBA with the FPOA, and under the city's longstanding practice dating back to at least 1995, a police officer may be promoted to the position of permanent sergeant only by taking a written examination, receiving a sufficiently high score to be placed on an eligibility list, and then being selected from that list.  There is, in short, no "source[] of entitlement such as state law or a contract between the parties," *Kaplan*, 2021 WL 3642121, at *5, to suggest that plaintiffs could legitimately demand to be promoted to the permanent sergeant position and to remain there.  The mere fact that Chief Johnson granted their grievance and directed that their "promotions [be made] permanent," and that the city processed personnel requisition forms based on this direction, are not sources of entitlement, but plainly ultra vires acts.  "An ultra vires contract with the government does not and cannot create a legitimate property interest."  *Rios v. Lebron*, No. CIV. 85-280, 2001 WL 378950, at *4 (D.V.I. Apr. 12, 2001) (citing cases).  Johnson himself conceded that the only authority upon which he concurred in the grievance's demand was his erroneous belief that city policy required that provisional appointees be promoted after ninety days and his personal view that plaintiffs deserved to be promoted.  *See* Johnson Dep. at 31-32 (PageID.1168).  Defendant Jackson, the city's director of human resources and labor relations, testified that Johnson had no authority to promote plaintiffs outside of the required competitive process.  *See* Jackson Dep. at 13-14, 103-04 (PageID.1108, 1131).

Because plaintiffs were not entitled to be placed in the position of permanent sergeant, they also had no entitlement to remain in that position.  Plaintiffs cite no case authority, and the Court is aware of none, for the proposition that one has a property interest in retaining a position that was obtained through mistake or in violation of required procedures.  If it had been discovered after plaintiffs were promoted that they lacked a required qualification (e.g., the

minimum years of seniority), they could not claim they had a property interest in the sergeant position merely because they had occupied the sergeant position for some period of time. By the same token, plaintiffs did not somehow acquire a property interest in this position merely because the police chief promoted them and the human resources department issued personnel requisition forms confirming the promotion, as promotions outside of the competitive process violate the city's established personnel policies, longstanding practice, and contractual obligations.

Plaintiffs argue that once they were made permanent sergeants they were entitled to the protections of the POLC's CBA, in particular the provisions stating that union members "cannot be discharged without good cause and their seniority cannot be taken away with regard to their position." Pls.' Resp. to Flint Defs.' Mot. for Summ. J. at 17. The Court rejects this argument because plaintiffs' promotion to the position of permanent sergeant was done without legal authority, and therefore plaintiffs never became bona fide members of the POLC. If POLC dues were deducted from plaintiffs' paychecks for the short period of time during which plaintiffs were deemed to be permanent sergeants (approximately from the end of September to the end of October 2019), they may have a claim for the return of that money. But plaintiffs cannot claim any rights under the POLC's CBA, as they were never legitimately placed into the position of permanent sergeant and they were therefore never bona fide members of that union. Even if plaintiffs were members of the POLC once they were promoted, the city plainly had good cause to revoke the promotions and return plaintiffs to their previous position as provisional sergeants because neither the police chief nor the human resources department had authority to promote plaintiffs outside of the competitive process.

For these reasons, the Court concludes that plaintiffs had no property interest in the

14

position of permanent sergeant.  Therefore, plaintiffs had no Fourteenth Amendment right to notice

or an opportunity to be heard before the city returned plaintiffs to the provisional sergeant position,

pursuant to its MOU with the FPOA.  The Court also concludes that the city did not violate any of

plaintiffs' rights under the POLC CBA, as plaintiffs were never bona fide members of that union.

The Court shall therefore grant the Flint defendants' motion for summary judgment and deny

plaintiffs' motion for summary judgment as to Counts I and III.

### *Count IV:  DFR Claim Against the POLC*

Plaintiffs also claim that the POLC violated its duty of fair representation.  They

argue that

> [a]fter becoming permanent sergeants, the union which represented
> them – Defendant POLC – filed a grievance opposing their
> promotion to permanent sergeant, failing to represent their interests.
> Subsequently, when Plaintiffs were demoted from the permanent
> sergeant positions, Defendant POLC again failed to represent them
> effectively and refused to process their grievance through arbitration.

Pls.' Resp. to POLC's Mot. for Summ. J. at 1.

As the Sixth Circuit has explained,

> [a] union breaches its duty of fair representation when its actions or
> omissions are arbitrary, discriminatory, or in bad faith.  *Garrison*,
> 334 F.3d at 538 (citing *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct.
> 903, 17 L.Ed.2d 842 (1967)). Plaintiffs do not need to show all three;
> rather, plaintiffs have three separate and distinct routes to prove that
> a union violated its duty of fair representation. *Id.* (citing *Black v.
> Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994)). A
> union's actions are arbitrary if, in light of the factual and legal
> landscape at the time of the union's actions, "the union's behavior is
> so far outside a 'wide range of reasonableness' as to be irrational." *Id.*
> (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111
> S. Ct. 1127, 113 L.Ed.2d 51 (1991)). Discrimination must be
> "intentional, severe, and unrelated to legitimate union objectives."
> *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v.
> Lockridge*, 403 U.S. 274, 301, 91 S. Ct. 1909, 29 L.Ed.2d 473 (1971)

(citation omitted). "To demonstrate bad faith, a plaintiff must show that the union acted with an improper intent, purpose, or motive encompassing fraud, dishonesty, and other intentionally misleading conduct." *Ohlendorf v. United Food & Commercial Workers Int'l Union*, Local 876, 883 F.3d 636, 644 (6th Cir. 2018) (citation omitted).

*DeShetler v. FCA US, LLC*, 790 F. App'x 664, 669-70 (6th Cir. 2019).

The POLC, which represents the FPSA, *see* Santiago Dep. at 9 (PageID.1139), filed two grievances, the first opposing plaintiffs' promotion to the position of permanent sergeant and the second opposing their demotion to the position of provisional sergeant. The first grievance, No. 19-105, dated October 15, 2019, states in relevant part:

> The City failed to notify FPSA of their intent to alter the makeup of the FPSA by appointing members based on favoritism and not standardized testing. In the history of this department, standardized testing has been part of the promotional process of the Officers, Sergeants, Lieutenants, and Captains. To initiate such action surreptitiously and without notice as required by the FPSA CBA is not just unreasonable under management rights, it is unethical as there as been a historical past practice of the testing process.

> \* \* \*

> Desired Settlement of Grievance

> Rescind and demote the six recently appointed members to the FPSA who did not test accordingly and who were not on a current established eligibility list.

> The department will test and maintain accordingly, a current promotional eligibility list for the rank of Sergeant and Lieutenant.

Pls.' Mot. for Prelim. Inj., Ex. 11 (PageID.307). On October 156, 2019, a lieutenant rejected this grievance at Step 2, stating that the remedy requested was "out[side] of the scope of [his] authority." *Id.* (PageID.308). There is no indication that this grievance was pursued to Step 3 or Step 4. *See id.*

16

The POLC's second grievance, No. 2019-134, dated December 13, 2019, states:

> On or about September 24, 2019 pursuant to a grievance filed by the Flint Police Officer's Association, the City appointed six (6) provisional sergeants to permanent sergeants.  On October 29, 2019 the City rescinded the provisional appointments [sic] and demoted the provisional appointees to their *status quo ante* with a memorandum of understanding between the City of Flint and the Flint Police Officer's Association.

> <u>Desired settlement of Grievance</u>
> Make the six (6) provisional sergeants permanent again.

Pls.' Mot. for Summ. J., Ex. 8 (PageID.1178).[6]  On December 20, 2019, at Step 4, this grievance was answered by the deputy police chief with the comment, "Neither approved nor denied.  Referred to human resources for mediation/arbitration."  *Id.* (PageID.1179).

By letter dated January 31, 2020, the POLC informed the president of the FPSA, Douglas Santiago, that the POLC's Grievance Review Committee had decided not to pursue either grievance to arbitration because

> [b]ased on our review, it is clear that an arbitrator would find that no contract violations occurred.  The propriety of promotions into your bargaining unit are an issue for the patrol unit and not a violation of the Collective Bargaining Unit.  Regarding the Grievance No. 19-134, the best possible outcome has already occurred by those demoted receiving preferential treatment in the subsequent promotional process.

Pls.' Resp. to POLC's First Mot. for Summ. J., Ex. 4 (PageID.581).  On February 6, 2020, plaintiffs asked the POLC to reconsider, *see id.*, Ex. 5 (PageID.583-84), but by letter dated March 18, 2020, it declined to do so on the grounds that the grievance was untimely and lacked merit:

---

[6] This grievance apparently was filed in response to plaintiffs' written request addressed to the POLC, dated November 29, 2019, *see* Pls.' Resp. to POLC's First Mot. for Summ. J., Ex. 3 (PageID.578-79), and the emailed request of the POLC's Labor Representative, Jim Stachowski, dated December 11, 2019.  *See id.*, Ex. 6 (PageID.587).

Firstly, it should be noted that upon further review, it was determined that the Grievants' initial request that a grievance be filed was untimely.  The Grievants were returned to the lower unit [FPOA] on October 29, 2019.  The request was made December 1, 2019.  The collective bargaining agreement requires that grievances be filed within approximately 12 working days.  Clearly, then, the Grievants did not make a timely request.

Regardless of any procedural shortcomings, there is no basis in the CBA upon which an arbitrator could sustain the grievance.  The Grievants were removed from their positions as a result of a grievance filed by the lower unit.  It is the lower unit's CBA that governs promotion to the Sergeant's unit.  If the City violated the lower unit's contract, then the Grievants were never properly in the Sergeant's unit.  By way of a bargained-for settlement with the lower unit, the City agreed to revoke the challenged promotions.  As part of that, the City and the lower unit agreed to give the Grievants preferential treatment and allow them to partially bypass the promotion process, despite the fact that the arrangement is contrary to the language in the lower unit's CBA.  An arbitrator will not disturb that agreement without strong contractual evidence.  The same would hold true if the lower unit's grievance were sustained in binding arbitration.

The reality is that nothing in the Sergeants' CBA supports the grievance.  The Sergeants were not removed for disciplinary reasons, thus the just cause provision does not apply.  They were not laid off, and so the lay off provision and recall provisions are inapplicable.  Whether or not the Grievants successfully avail themselves to the streamlined promotional process, seniority is a non-issue.  Simply put, the CBA does not address the unique circumstances or offer any recourse for the Grievants.

Pls.' Mot. for Summ. J., Ex. 9 (PageID.1181-82).

On this record, plaintiffs' DFR claim plainly lacks merit.  The first grievance, No. 19-105, was written by the president of the FPSA, Santiago, who testified that he did not believe that plaintiffs ever became members of the sergeants union because they were never legitimately classified as permanent sergeants.  *See* Santiago Dep. at 38-39 (PageID.1146-47).  The purpose of the grievance, which listed the FPSA itself as the grievant, was to protect the "legitimate and

credible" promotional procedure from officer to sergeant which, in Santiago's view, is important for maintaining the public's trust as well as officers' trust. *See id.* at 42, 53-54 (PageID.1147, 1150). Santiago also testified that this grievance became moot when the city and the FPOA entered into the MOU, which returned plaintiffs to their position as provisional sergeant, and that the FPSA was uninvolved in that negotiation. *Id.* at 58-59, 77 (PageID.1151-52, 1156); *see also* Smith Dep. at 59 (PageID.1096).

The POLC owed plaintiffs no duty because, for the reasons indicated above, they never became bona fide members of the FPSA. Even if plaintiffs were members of the FPSA at the time, POLC did not violate its duty of fair representation because its decision to file this grievance was not arbitrary, discriminatory, or in bad faith. The POLC clearly had a reasonable basis to oppose plaintiffs' promotion, as they had not gone through the established promotional process. The POLC's action was therefore neither "irrational," "unrelated to legitimate union objectives," nor done with "an improper intent, purpose, or motive encompassing fraud, dishonesty, and other intentionally misleading conduct." *DeShetler*, 790 F. App'x at 669-70.

In December 2019, after plaintiffs were returned to provisional sergeant, the POLC filed its second grievance, No. 2019-134, opposing the demotion due to "confusion of whether or not they were actually in the unit or not [and] out of fairness." Santiago Dep. at 62 (PageID.1152). The POLC pursued this grievance, which requested that plaintiffs be reinstated as permanent sergeants, through to Step 4 but declined to demand arbitration. Its decision not to pursue the grievance further was not arbitrary, discriminatory, or in bad faith. Again, plaintiffs were not members of the FPSA, so the POLC owed them no duty at all. Even if they were members, POLC did not violate its duty of fair representation by declining to pursue the grievance to arbitration. *See*

*Vaca v. Sipes*, 386 U.S. 171, 190 (1967) (stating, "we do not agree that the individual employee has

an absolute right to have his grievance taken to arbitration"); *Driver v. U.S. Postal Serv.*, 328 F.3d

863, 869 (6th Cir. 2003) (noting that "a union's decision not to pursue a grievance, based on

thorough investigation of the employee's complaint and a reasonable conclusion that the complaint

does not merit further use of the grievance procedure, does not necessarily violate the union's duty

of fair representation").  The POLC obviously investigated plaintiffs' grievance thoroughly and, for

the reasons stated above, reasonably concluded that the matter did not merit being pursued further.

For these reasons, the Court concludes that there are no genuine issues of material

fact concerning plaintiffs' DFR claim and that the POLC is entitled to judgment as a matter of law.

The Court shall therefore grant defendant POLC's motion for summary judgment and deny

plaintiffs' motion for summary judgment as to Count IV.

### Count V:  First Amendment Retaliation

Finally, plaintiffs claim that the Flint defendants violated their First Amendment

rights by demoting them from the position of provisional sergeant to police officer in retaliation for

filing the instant lawsuit.  This claim has no merit.

The elements of a First Amendment retaliation claim are

(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).  The Flint defendants argue that they are entitled

to summary judgment on this claim because plaintiffs cannot establish the third element.

Plaintiffs argue that "[w]hen Defendants' motivation is an issue, 'summary judgment

is particularly inappropriate.'" Pls.' Resp. to Flint Defs.' Mot. for Summ. J. at 20 (quoting *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002)). Plaintiffs note that they were demoted "[a]fter the lawsuit," that Flint "needed sergeants at the time," and that "[i]n the past, when Plaintiffs chose not to take the exam, they were not taken out of the provisional role." *Id.*

       The timing of plaintiffs' demotion does not support their argument that they were demoted in retaliation for filing this lawsuit. Plaintiffs filed suit on March 18, 2020, and "[t]hey were demoted from their provisional Sergeant positions effective December 27, 2020." FAC ¶ 6. Temporal proximity between protected activity and adverse action can, by itself, support an inference of retaliatory motive, but only when the two events are "very close in time." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). The inference generally can no longer be made after three months have elapsed. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 664-65 (6th Cir. 2020). In the present case, plaintiffs were demoted from the position of provisional sergeant to police officer nine months after filing suit. Therefore, temporal proximity alone does not support an inference of causation in this case.

       Plaintiffs also point to the fact that at the time they were demoted, Flint needed sergeants. Green testified that plaintiffs were "doing an excellent job" and that he wanted to keep them as sergeants. Green Dep. at 6, 11-12 (PageID.1051, 1053). He also agreed that in late 2020 "there was a need for sergeants" and that for the department's operations it would have been best to keep plaintiffs in their provisional positions.[7] *Id.* at 11, 13 (PageID.1053). The fact that Green

---

[7] Soon after Green demoted plaintiffs, he "repromoted" two of them, Watson and Reid, to the provisional sergeant position because they were needed in particular supervisory roles, one supervising the "special investigative unit" and the other supervising the neighborhood safety officers. Green Dep. at 13-15 (PageID.1053-54). In his December 27, 2020, email informing plaintiffs and others of plaintiffs' demotion, Green indicated that "[t]hese demotions will

nonetheless demoted plaintiffs is not evidence of retaliation for filing this lawsuit. Green testified

that he demoted plaintiffs "based on the MOU that existed." *Id.* at 13 (PageID.1053). As noted, the

MOU stated that plaintiffs' positions as provisional sergeants would "remain unchanged pending

the completion of a promotional examination for the permanent placement of FPOA members into

the position of Police Sergeant" and that plaintiffs would sit for that examination. Plaintiffs chose

not to take this examination. Their demotion to the position of police officer was consistent not only

with the MOU, but also with Rule VII, Section 3, of the city's personnel rules. As noted above, that

rule states that "[a] provisional appointment may be continued in employment only until

examinations can be held, an eligible list established, certifications made, and arrangements

completed with the person whose name is certified to begin work, at which time the provisional

appointee shall be terminated" and that "[u]pon termination of a provisional appointment, the

employee shall be entitled to return to his prior employment status." A sergeants examination was

held in October 2020, which plaintiffs elected not to take, while other candidates took the

examination, passed it, were selected from an eligible list, and then duly appointed to the rank of

sergeant. At that point in time, city policy required that plaintiffs' provisional positions be

terminated and plaintiffs be returned to their prior employment status, i.e., police officer.


On this record, no reasonable jury could conclude that the filing of the instant lawsuit

played any role whatsoever in Green's decision to demote plaintiffs from provisional sergeant to

police officer. The Court shall therefore grant the Flint defendants' motion for summary judgment

---

severely affect patrol operations, therefore some shall be re-promoted to provisional rank. This
action causes 10 vacant Sgt. positions, therefore I will be requesting Human Resources post a
Sergeant promotional examination." Pls.' Mot. for Summ. J., Ex. 7 (PageID.1176).

and deny plaintiffs' motion for summary judgment as to Count V.

***Conclusion***

For the reasons stated above,

IT IS ORDERED that the Flint defendants' motion for summary judgment is granted [ECF NO. 57].

IT IS FURTHER ORDERED that the POLC's motion for summary judgment is granted [ECF NO. 58].

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is denied. [ECF NO. 59].

IT IS FURTHER ORDERED that the order referring plaintiffs' motion to compel discovery to Magistrate Judge Grand for hearing and determination is vacated [ECF NO. 61].

IT IS FURTHER ORDERED that plaintiffs' motion to compel discovery is denied as moot [ECF NO. 60].

s/Bernard A. Friedman                    
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  August 27, 2021
Detroit, Michigan